[Crim. No. 5677.   In Bank.   Apr. 28, 1955.]

THE PEOPLE, Respondent, v. WILLIAM E. RAVEN, Appellant.

J. Frederick Rosen and William W. Shaw for Appellant.

Edmund G. Brown, Attorney General and W. B. Thayer, Deputy Attorney General, for Respondent.

GIBSON, C. J.—Defendant appeals from a judgment of conviction of receiving stolen property in violation of section 496 of the Penal Code.* The admitted thief, Diggs, sold two jeep tires and three power tools to defendant, who was in the business of buying and selling used merchandise.

The testimony of Diggs, the principal witness for the prosecution, was substantially as follows: The stolen goods were sold to defendant in three separate transactions. In a conversation with defendant, Diggs mentioned that he had some new jeep tires which he would like to sell, and defendant told him to "go get them." When Diggs returned with the tires, he informed defendant that they were stolen but did not say where they came from. Several days later, Diggs told defendant that he knew where he could get a drill and a sander which had been stolen, and he indicated that he was acting for the thieves. He then brought the tools, and defendant purchased them. The third transaction took place on the following day when Diggs sold defendant another tool, after informing him that it had been stolen.

Diggs had previously purchased merchandise from defendant and had, on a number of occasions, sold defendant goods rightfully in his possession. Defendant had sometimes

---

*Section 496 of the Penal Code provides in part:
"Every person who buys or receives any property which has been stolen or which has been obtained in any manner constituting theft or extortion, knowing the same to be so stolen or obtained, or who conceals, withholds or aids in concealing or withholding any such property from the owner, is punishable by imprisonment in a state prison for not more than 10 years, or in a county jail for not more than one year."

obtained receipts from Diggs in connection with legitimate sales, but Diggs did not give him any receipts for the money paid for the stolen property. There was evidence that the tires and tools for which defendant paid a total sum of $37 were worth approximately $250.

A captain of police testified that, when he visited defendant's place of business with a list of some of the stolen tools, defendant readily acknowledged buying the tools from Diggs. Defendant volunteered the information that he had purchased other items from Diggs, including the tires, and expressed a wish to "turn over" all property bought from Diggs to determine whether it was stolen.

Defendant, testifying in his own behalf, denied that he knew the tires or tools were stolen when he purchased them. His version of the transactions was that Diggs represented that the tires were obtained in payment for work he had done, that two of the power tools were being sold for another person, and that the third tool came from a garage which Diggs had previously operated. Defendant testified that he first learned that any of the property was stolen when, several days after the purchases were made, Diggs called him by telephone and said, "Get rid of everything I sold you. It is all hot."

After the prosecution had closed its case, defendant called Diggs' wife as a witness for the purpose of impeaching Diggs by showing that he had made a prior statement to her which was inconsistent with his present testimony. ██ Before a witness may be impeached by an inconsistent statement, it must be related to him with the circumstances of time, place, and persons present, and he must be asked whether he made it and must be allowed to explain it if he admits making it. (Code Civ. Proc., § 2052.) The required foundation had not been laid by defendant when Diggs was on the stand, and attempts to impeach him were objected to by the prosecution on that ground. In the course of the arguments on the objections, counsel for defendant stated that he was prepared to prove by the testimony of Mrs. Diggs that Diggs had told her that defendant did not know the property was stolen when he purchased it. In order to lay a foundation for the impeachment, defendant applied to the court for permission to recall Diggs on cross-examination. The request was denied on the ground that the court was without power to permit further cross-examination of Diggs unless the prosecution reopened its case.

526

The reason given by the court for refusing to permit further cross-examination of Diggs was clearly erroneous. ■ The court had the power to allow the witness to be recalled and cross-examined by defendant, at any point in the trial, for the purpose of laying a foundation to impeach him. (*Reed* v. *Clark*, 47 Cal. 194, 202; see *People* v. *Shaw*, 111 Cal. 171, 177 [43 P. 593]; Code Civ. Proc., § 2050.) Nothing in the record shows how the court would have exercised its discretion had it not improperly determined that it was powerless to grant defendant's request. ■ We are of the view that there was no sound basis for preventing introduction of the impeaching testimony which defendant proposed to introduce. That testimony was vitally important to the defense because it would have contradicted the only direct evidence of defendant's guilty knowledge. It is argued that, because Diggs was an admitted thief and had been impeached by evidence that he had previously been convicted of a felony on three separate occasions, the testimony of Mrs. Diggs would have been merely cumulative and that, therefore, defendant was not prejudiced. There is, however, a significant difference between discrediting a witness by evidence of former convictions and impeaching him by showing that he has made a specific statement directly contrary to his testimony, especially where proof of the fact in question is dependent upon his testimony and is essential to establish the guilt of the defendant. Under the circumstances, the error of the court in failing to exercise its discretion must be considered prejudicial.

The next question is whether the court erred in refusing to instruct the jury that defendant could not be convicted on the uncorroborated testimony of Diggs. Section 1111 of the Penal Code provides that a "conviction cannot be had upon the testimony of an accomplice unless it be corroborated" and defines an accomplice as "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." ■ It is settled that the thief and the one knowingly receiving stolen property from him are guilty of distinct and separate substantive offenses and are not accomplices of each other. (*In re Morton*, 179 Cal. 510, 513-514 [177 P. 453]; *People* v. *Burness*, 53 Cal.App.2d 214, 218-219 [127 P.2d 623]; *People* v. *Gordon*, 41 Cal.App.2d 226, 227 [106 P.2d 208]; see *People* v. *Lima*, 25 Cal.2d 573, 576 [154 P.2d 698].) ■ An exception to the rule is recognized when

the thief and the receiver conspire together in a prearranged plan whereby one is to steal and the other is to buy. (*People v. Lima,* 25 Cal.2d 573, 578-579 [154 P.2d 698]; *People* v. *Coakley,* 108 Cal.App.2d 223, 227 [238 P.2d 633].) The evidence here, however, does not warrant a conclusion that defendant and Diggs entered into such a conspiracy, and, accordingly, no corroboration of the testimony of Diggs was required.

Defendant also contends that other errors were committed, but, since the matters complained of are not likely to arise on a retrial of the case, they need not be discussed here.

The judgment is reversed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.